Judge Rovner is joining us by a remote video hookup and for counsel who are arguing you may need to be a little patient with us because of a sometimes a minor delay when she is speaking. Also we will be taking a brief recess after the second argument of the day that would be the the Crum and Forster case. We'll decreed at a payment of five hundred fivety three dollars fiftieth nineteen twenty five seventy nine Mr. Marshall. Good morning your honors may it please the court. Kevin Marshall representing the University of Notre Dame. This case has a somewhat complicated procedural history. But it's fundamentally a breach of contract action. I'd like to focus on that claim in my opening argument. As in any contract case a plaintiff must show a breach. And that that breach caused the damages he claims. Here neither was the case. There are four independent reasons why the district court erred in entering a judgment of over five hundred thousand dollars for Dr. Collins. On his claim that Notre Dame breached the academic articles and firing him for conduct. For which he later pleaded guilty to theft from a federal program. First. In holding on summary judgment the Notre Dame breached one procedure. In the course of the academic adjudication leading to his dismissal. The district court misread the academic articles. Because the contract's explanation of why an alternate is elected for a three professor hearing committee. Contemplates recusal only for actual bias or interest. The articles did not require Father Coughlin to recuse in the circumstances here. There was a complete absence. Mr. Marshall forgive me. Yes. In the internal appeal process. That was provided by Notre Dame prior to termination. Could Dr. Collins have challenged the fairness. Of the hearing based on Father Coughlin's participation. He could have challenged it within the hearing committee which is a formal hearing. It's not was not addressed below whether he could have done it in the appeal process. But it is clear he made no effort to do so. The appeal. He did not. So. Correct. Is there any restriction on the issues that can be raised. No. The appeal board. Is a completely new panel of three tenured professors. That conducts a full review of the record de novo. It doesn't just look at the hearing committee's reasoning. It looks at the transcript and all the material below. I do have one more question. Did anyone ever challenge the selection of Huber as an alternate on the hearing committee. And wasn't he also involved in the informal resolution stage. He was also involved. He as an alternate he never actually served. He was not part of the hearing committee. And I'm not certain whether that was challenged below. It was not an issue. That was fought over. Can I ask you. Mr. Marshall why don't you identify your three other issues and then we'll. Sort of take pot shots. Okay. We're free to take pot shots. No no. I just want to hear your structure. On the first issue. Again there was a complete absence of evidence or frankly even a claim. That father Coughlin who like Dr. Collins was a tenured professor. Harbor any bias or interest in the case. Whether against or for Dr. Collins. In fact Dr. Collins in the district court expressly embrace the findings of the hearing committee on which father Coughlin sat. That's my first reason. The second is that in any event. The district court in granting the summary judgment. Failed to apply the background rule by which a is a breach. Only if it was a failure of substantial compliance. Dr. Collins does not claim that Notre Dame failed to at least substantially comply. In fact the summary judgment motion below concerned only the merits of his firing not the procedure. Nor could he make such a claim. Notre Dame carried out the full panoply of procedures for which the academic articles call. And there's no evidence of bad faith. Take just the hearing committee itself. Father Coughlin was just one of three tenured professors on the committee. They received briefs. They held a formal hearing at which the parties were allowed to have and did have counsel. And they ruled under a clear and convincing standard. Yet they were unanimous in ruling against Dr. Collins. Or take the appeal which I've already mentioned. This is available only for an accused. The accused Dr. Collins. In fact eight persons at four different stages. All found serious cause to dismiss Dr. Collins. My third reason. In any event the district court on summary judgment erroneously ignored that Dr. Collins had forfeited the procedural breach. Involving Dr. Collins. Involving sorry Father Coughlin. The text and structure of the academic articles confirmed by background law. Required Dr. Collins to fully participate in the academic adjudication rather than sandbag. And that's especially true with respect to the hearing committee. Which holds what the academic articles expressly call a formal hearing again with counsel. And on the summary judgment record which consisted of a district court approved joint appendix. It was undisputed that Dr. Collins knew firsthand of Father Coughlin's earlier involvement in the admittedly informal mediation. Yet he never sought to recuse him from the hearing committee. Notwithstanding ample opportunities. The one page affidavit that Collins attorney submitted after the summary judgment argument. And which has no factual support in the record does nothing to his briefs ignores its substance as well as the requirements of rule 56. Fourth. In giving Dr. Collins damages for the supposed procedural breach after bench trial. The district court violated basic contract law and uniform authority. By failing to require Dr. Collins to prove that that breach caused his claim lost wages which it did not. Dr. Collins did not try to prove such causation. He effectively concedes in his briefs here that he cannot. And in any event the district court could not have found causation. There was uncontroverted trial testimony from multiple witnesses including the two other members of the hearing committee. The Father Coughlin's presence on the hearing committee had no effect on the outcome. Either of the findings of the hearing committee itself or the ultimate decision of the university. There are also ample undisputed facts both on the summary judgment and as found by the district court after trial. Establishing that Notre Dame did have serious cause to dismiss him. Just as every adjudicator at Notre Dame found at every stage of the case. That concludes the four reasons why this court should reverse the district court's finding on the procedural breach and enter a summary judgment for Notre Dame. I'd like to briefly address a few other issues. Before you want to take hot shots. Well there'll be plenty of questions for everybody I'm sure. I guess you've all described the procedural issue here sometimes as a procedural bobble in arguing that Father Coughlin's presence on the hearing committee if it was prohibited by the academic articles. I understand that's a separate issue. But if it was I guess I want to push back a little bit on this idea that it was just a minor thing. For example the Supreme Court a few years ago in a case called Gwynne against United States dealt with the three judge panel from the Ninth Circuit with a territorial judge sitting on it by designation without Article 3 protections. And the Supreme Court said not acceptable to have that one. There were two perfectly capable and a quorum of two Article 3 judges. But the Supreme Court threw out the results of that. So the appeal before that panel if a district judge in the federal system sits on an appeal from a decision that he or she made in the district court they're in serious trouble. So I guess I can think of some counterexamples like that in which having the wrong person participate because of various considerations winds up undermining the integrity of the decision. First of all again this is a contract question. And then it's important to keep in mind what Father Coughlin did previously. Actually it's a contract question. It's not a question of qualification to be on the panel. As we've explained this recusal provision is not in the list of qualifications. And then it's important to keep in mind what the prior involvement was. We've called it an informal mediation. Dr. Collins agrees with that characterization. And all it involved was Father Coughlin and one other person having one phone call with Dr. Collins and his counsel and representatives of the university. It did not involve making any recommendations for resolution of the case. It did not involve any decision. It did not involve opining in any way whatsoever on the strength of the party's positions. I'd also like to compare it to some other examples one might use. So given the nature of that prior involvement in which Father Coughlin did nothing to express a view on the case, would there be any reason his impartiality might reasonably be doubted? I can't think of one and Dr. Collins has not pointed to any. Given that involvement in the first stage of the proceeding, did Father Coughlin have any relationship to the underlying dispute or to the parties? No. If we were to decide that the district court improperly granted summary judgment on the issue as to Father Coughlin's participation in the hearing, is a remand for a trial required or do the facts as set forth in the stipulated record support the determination of serious cause as a matter of law? There's no need for a remand, Your Honor. I think your question is focused on what we call the substantive breach question of serious cause. That was fully briefed on summary judgment below on a stipulated record. There's no more factual development to be done. Not only was it fully briefed below, Dr. Collins does not dispute this court's authority to direct the entry of summary judgment. He doesn't dispute the substantial evidence standard that applies. Our brief documents the long list of facts found by the hearing committee to support its finding of serious cause, none of which Dr. Collins has challenged. I'll simply highlight one, which is his repeated massive misuses of federal and Notre Dame grant money to buy non-budgeted cameras and computers for his own personal use to the tune of approximately $300,000. That at least provides a substantial basis for the university to have found, among other things, academic dishonesty, professional misconduct, and a violation of the Catholic character of the university. One of the things that you've argued, Mr. Marshall, is that courts generally tend to defer to colleges and universities on tenure matters. I totally understand that with respect to deciding whether Dr. So-and-so's dissertation in mathematics or in physics or in microbiology is sufficient to warrant either hiring or later work is appropriate for tenure. I wonder whether that same deference is appropriate here when we're talking about, in essence, a breach of contract claim where courts deal with whether one party has cause to terminate a contract all the time. The cases that involve granting tenure are not the ones that we rely on, although those are certainly analogous. The cases we cite all involve dismissal, and yet they nevertheless apply a substantial compliance question with respect to procedure and a substantial evidence standard with respect to the substance of the decision. I also think that any difference between granting tenure and here revoking it is at most a matter of degree. So the definition of serious cause in the contract contemplates the same kind of expert and professional academic judgments that might go into a tenure decision. As I just mentioned, the lists of what counts as serious cause, and these were part of the charges against Dr. Collins, talk about academic dishonesty. They talk about professional misconduct, and they also, frankly, talk about questions of religion, whether his conduct violated the Catholic character of the university. I think the academic articles that the provision on recusal might be deemed ambiguous. I don't think so, Your Honor. One way to think about it is to imagine that that sentence, there's a textual argument and a contextual argument. The textual argument is imagine that that sentence ended after the word bias. It talked about someone who must recuse on account of bias or interest, period. I think the only natural way to read that would be that it's contemplating actual bias or interest. Then the phrase we're talking about comes after a comma, and it says, including participation in the informal resolution process. So what does one do with the word including in that phrase? I think you would have to read it as a subset of what comes before. If what comes before should be read to mean actual bias or interest, then the including means including any actual bias or interest that might have arisen in the context of the informal resolution process. That's the textual argument. The contextual argument, which Dr. Collins doesn't really respond, is that there are at least two other provisions in the academic articles, including one in the same section, that explicitly require total recusal if a professor had any prior involvement. One involves the appeal board, which Judge Robner was asking about. It says, you can't be on the appeal board if you're on the hearing committee. That's pretty straightforward. Another, which is a few pages earlier, says you can't be on a reappointment committee if you had any involvement, direct or indirect, in any part of the prior proceedings. One would have to read the sentence at issue here in light of that, as well as the textual arguments I just made. If there are no further questions, I'd like to briefly address some issues in the cross appeal. I can address that more in rebuttal if necessary. With respect to the question of whether the damages award of $500,000 for Dr. Collins was too low and should instead be $5 million, the key point there is that Dr. Collins completely fails to grapple with the language in the academic articles that directly addresses when Notre Dame should provide salary and may stop providing salary. There, very explicit, it says Notre Dame pays until there's a final decision. After the final decision, it does not have to pay. That's precisely what Notre Dame did here. It paid Dr. Collins throughout the academic adjudication until the president of the university issued a final decision. It's not paid him since. It's exactly what the contract calls for. On the question of constructive fraud, there are multiple independent grounds to affirm the district court's decision after a bench trial. I'll just highlight a few. Dr. Collins, as far as I can tell, identifies no even supposedly false statement by Notre Dame. He also identifies no remotely similar case finding of fiduciary duty and simply ignores the three that we cite. With respect to both of those, it's telling. There are two factual findings of the district court, of course reviewed for clear error, that he doesn't even seem to challenge at all. One is that Notre Dame did not occupy a dominant position over Dr. Collins with respect to propriety of the use of grant money. And the other is that he, not Notre Dame, was primarily responsible for propriety of purchases using grant money. With respect to the last element of constructive fraud regarding advantage. It's at least agreed, I think, that any advantage Notre Dame gained would need to have been at the expense of Dr. Collins. But the district court expressly found that there was none. That should be conclusive, especially on clear error review. And beyond that, I'll simply point the court to its published decision in Trico, which the district court relied on and which Dr. Collins ignores. The subsequent decision in Strong, which he makes a great deal, was not focused on this issue, nor did it question Trico or the rule in Trico. And finally, with respect to the denial of the motions to amend, it's agreed that the standard review is, of course, abuse of discretion. So we have to ask whether any reasonable person could agree with what the district court did. Dr. Collins cites no authority, suggesting that one would not. And with respect to the first proposed amendment on the claims of negligent misrepresentation, it's important to remember that this request came four weeks before trial. Two years after his prior amendment to add the constructive fraud claim, which is related. And he gave the district court no reason to explain his delay. If there are no further questions, I'll reserve the remainder of my time. Thank you, Mr. Marshall. For Dr. Collins, Mr. Giannullo. Thank you, Judge, and good job on the pronunciation. Usually it doesn't get it right. My name is Andrew Giannullo. May it please the court, I represent Dr. Oliver Collins. I'd like to start by addressing some of the issues regarding serious cause that Mr. Marshall brought up. Mr. Marshall talks about that Dr. Collins does not challenge serious cause in the findings of the hearing committee. However, what Dr. Collins does challenge is that the hearing committee's findings do not, as a matter of law, satisfy the definition of serious cause in the contract. And this is something certainly that a court can review. It's a question of contract interpretation. We have the findings from the hearing committee. Now we have to see if those findings meet the definition of serious cause in the contract. And serious cause is defined in the contract. And in the charging letter against Dr. Collins, the associate provost, not the provost who's supposed to write that letter, but the associate provost lists three serious cause allegations. Serious and deliberate misconduct, continual serious disregard for the Catholic character, and causing notorious and public scandal. In this case, the allegations, there was no publicity or public scandal. There were no issues of religion or a continual disregard of Catholic character. And certainly, even if there were issues of that, misconduct and deliberate misconduct would have to be met. Have other tenured faculty members of Notre Dame pled guilty to federal felonies? I don't know, Your Honor. Being convicted of a felony is a list of serious cause. But at the time this hearing commenced, at the time the hearing committee and Donald Pope Davis sent this letter, there were no charges against Dr. Collins. The predicate for the charges were there already, weren't they? I'm sorry? The predicate for the charges were? The predicate for the charges were the two, basically two findings that the hearing committee found in that he purchased equipment not in the budget for the NSF grant and... He denied that? No, Judge, but it is not misconduct. Purchasing equipment outside of the MRI grant budget is not misconduct because Notre Dame, and there's a significant amount of evidence in the record saying that Notre Dame allowed and in fact informed Dr. Collins he did not need to request permission from the National Science Foundation to purchase grant equipment that was not in the original budget. Notre Dame has a process and they have an entire office of research that helps professors deal with grant administration issues. And there's in fact an exhibit, exhibit 18, that shows very clearly this was distributed to Dr. Collins by the office of research that the National Science Foundation does not require notice when purchasing equipment outside of the budget. So he was relying upon the expert advice of Notre Dame. So was he not guilty of the crime? Well, Your Honor, that is a good question and that really speaks to what the factual basis of the crime is and what the mens rea of the crime is. Well, my concern is that your briefs seem to argue that he's not actually guilty of the crime and that he can only be held accountable for what he admitted in his factual basis before the district judge. And what he pled guilty to is every element of the felony, including the mens rea. And Judge, one of the elements of that felony is he converts equipment. And conversion, you know, Notre Dame cites embezzle, steals, obtains by fraud, but one of the elements is or converts. And conversion, while it is an intentional act, does not necessarily require a mens rea of nefarious conduct or nefarious intention. You're denying there was a mens rea? No, what I'm saying, Judge, is that the mens rea of the statute, at least Judge DiGiulio, who entered the guilty plea, was sufficiently low that Dr. Collins' actions of purchasing equipment not outside the budget, even though he did so in reliance upon Notre Dame's expert advice. Did he tell Judge DiGiulio that he was blaming Notre Dame? All he told Judge DiGiulio was that he purchased equipment not in the budget. And did so knowingly? He knew that the equipment was not in the original budget, yes. And so the issue there is that those acts, the predicate for those acts, the findings of the hearing committee that he purchased equipment not inside the NSF budget, that is not, at least according to Notre Dame, that is not misconduct because Notre Dame told him he could and, in fact, required that he go through their approval process, which he did. There's a five-step approval process. It went through five levels of review. The grant accountant was asked, was told he wanted equipment that wasn't in the budget. He submitted a purchase order. It went through five levels of review, and it was purchased. The NSF, at least according to Notre Dame, Did he disclose his intended uses of that equipment that then became the foundation for the charges? The requirement is the use needs to be for grant purposes. Answer his question. He disclosed that it was for grant purposes. He wanted the equipment. Not for personal use? Not for personal use, Judge. And personal use, it's important to note the hearing committee did not find that he used extensive personal use. They found there was some personal use. Some personal use is allowed. Notre Dame has a personal use policy that allows for personal use of grant equipment so long as it doesn't interfere with grant purposes. Does it allow thousands of pictures of your home? Pardon me? Does it allow for the taking of thousands of photographs of one's home? Judge, Dr. Collins testified about that, that he was creating a database to build up for grant purposes. And one way to do that was to take a significant amount of photographs of certain types of objects. And in fact, his lab contained thousands of photographs of his equipment and things of that nature. Notably, the hearing committee would not allow Father Coughlin, who was head of the hearing committee, would not allow that the lab be visited during the hearing committee. Otherwise, those thousands of photographs of equipment and things of that nature would also have been in evidence. There was expert testimony at trial that the cameras and the photographs and that system was in fact used to help on grant purposes. And there's no argument from anyone from Notre Dame that it wasn't used on grant purposes. Could we go back and talk about the summary judgment motion? The summary judgment motion that Dr. Collins proffered didn't raise any challenge to the hearing. And it didn't mention Father Coughlin. And your reply memorandum stated only that his participation was immaterial to your summary judgment motion, but material to your argument opposing Notre Dame's motion. How then was that issue before the district court as a basis to grant summary motion to Dr. Collins? I mean, did you ever in the complaint or your summary judgment motion argue that Father Coughlin's participation on the hearing committee was a procedural violation that itself constituted a breach of contract and a wrongful termination? Yes, Your Honor. I think that's exactly what the district court found. That's not the question. I know the district court found that, but I'm asking how? These breaches were in the record before the court on summary judgment. You did not argue. Pardon me? The question from Judge Grovner was where did you alert the district court and Notre Dame to that possible procedural argument? I believe it was in the complaint, Judge. Where? I didn't see it. There's an amended complaint I know that it contains procedural breaches. Was that the amended complaint before or after the summary judgment ruling? I believe there was one amended complaint after, and all those breaches were in the record before summary judgment. So you didn't put it in the complaint until after the district judge had found it. Is that right? Judge, I was not part of the case then, but I don't know exactly what the complaint says about that. This issue about present how this issue arose is pretty critical to this appeal. Judge, we alleged a breach of contract in the complaint. A breach of contract can include substantive breaches or procedural breaches, and the record that was stipulated before summary judgment contained procedural breaches, and the judge found that. Without Dr. Collins having asserted that? We asserted a breach of contract, Judge. That's not specific enough. The district judge found that Notre Dame had forfeited its right to raise the issue about the failure by Dr. Collins to raise any challenge to Father Coughlin's participation. Where did Notre Dame, and exactly when did Notre Dame, in your view, have an opportunity to present evidence to contradict Mr. Hiddenbach's affidavit? Judge, to answer your question specifically first, they had an opportunity. They knew an affidavit at oral argument on summary judgment. They knew an affidavit was coming. The judge gave them an opportunity to simultaneously file evidence regarding the information that was coming in the affidavit. And to get specifically to your question, Judge, after the affidavit's simultaneous filings were done, Notre Dame could have filed a motion to strike that affidavit. Didn't the judge make pretty clear that he was done? He didn't want to hear any more from folks after that post-argument briefing? He did until trial, Judge, where he opened those back up, and Notre Dame had an opportunity at the trial to present evidence in opposition to the affidavit. Where do we find that? We can find that in the record, Judge, and I'll cite you to where it is in our brief. But the district court judge, I believe transcript at 734 in the transcript is where the district court judge talks about that he wants to hear everything, including issues that he had already talked about. 734 to 737. Look, because of the court's insistence on simultaneous filings, it certainly looks like Notre Dame was presented with no opportunity to respond. And, in fact, what the court did, it seems, is it took Notre Dame's failure to present its own affidavits in the supplemental filing as a forfeiture of its right to challenge that issue, even though Notre Dame would have no way of knowing the basis of a lawyer-in-box claim at that point because the record contained no evidence of any complaint regarding Father Hofland's participation. And Notre Dame had already pointed that out. So, at a minimum, Notre Dame would have had to know when and to whom it might have raised the issue in order to counter it with an affidavit, but Notre Dame was denied that opportunity. And, moreover, it seems to me that the affidavit itself is so vague as to arguably be insufficient to present any issue or fact. Judge, in response, Notre Dame was aware of what information that affidavit would claim at the oral argument on summary judgment. John Ittenbach, at that oral argument, stated that he had objected in a pretrial hearing, and he said he would swear out an affidavit to that effect. And so Notre Dame did know what was going to be in the affidavit. Regarding the affidavit, Judge, that is personal knowledge of Mr. Ittenbach. There are facts. I made an objection. I raised the issue before the pre-hearing. When and where and with whom? When, he never says who was there. There's a lot more that he never says. It's, you know, he doesn't even say what was in writing. It states only that he raised the issue of Father Coughlin being chair of the committee, not that he raised the issue of Father Coughlin's participation on the committee in any role. And in any event, there's no provision in the contract that restricts who can be the chair of the committee, so a challenge to Father Coughlin's role as chair would be irrelevant. And most of all, the affidavit doesn't indicate that he requested that Father Coughlin recuse from the hearing. It's a very, it's as bare bones an affidavit as I could ever imagine, actually. And, Judge, the other issue on that is that raising that issue is not required under the contract. The contract language speaks for itself that he must recuse himself because of participating in the informal. That's not a quote. It says, must recuse himself for bias or interest including participation in the informal proceedings. That's the quote, I believe. Yes, that's the quote. In addition, Judge, I'm having a terrible problem trying to understand why any affidavit was needed from Notre Dame because the written record itself, which contained numerous pre-hearing emails from Collins regarding the hearing and an extensive 18-page pre-hearing memorandum with exhibits as well as a transcript of the hearing, none of it contained objection to Father Coughlin. So that alone seems sufficient to cast doubt on the Ittenbach affidavit until right away we have a fact issue. I mean, that's the way it looks. Judge, the affidavit, it's Dr. Collins' position that the affidavit is not required to show a procedural breach. Father Coughlin's participation on the hearing committee in and of itself shows a procedural breach because it's not permitted by the academic articles. Your position then is that there's no obligation by the faculty member to raise any fixable procedural objections. The contract is what it says, Judge, and the contract says that the committee member must recuse themselves and does not state that the professor must raise that issue. That's a plain reading of the contract. In addition, on the summary judgment record, there were other procedural breaches that the judge could have raised at that. He did not because he found that Father Coughlin's particular Well, what did you argue? I'm sorry? What did you argue in terms of procedural? We did not raise those arguments, but they were on the record for the judge to review. Did you want to comment on Notre Dame's point about the provost's power to delegate? Yes, Your Honor. The provost's power to delegate, there's a place in the academic articles that says the provost may delegate his duties, but it may delegate means when he's permitted to delegate, he may delegate them. In places throughout the academic articles, whenever delegation is allowed, it's always stated. For example, the president or his designee in that case. In this case, Section 8, the main section of the termination, requires that the provost make the final decision. The provost, after reviewing the hearing committee findings, determines the case. From that point, there is no evidence that Dr. Burrish, who was the provost at the time, ever even looked at the hearing committee's findings. The assistant, the associate provost, made all decisions that were reserved solely for the provost. That's a serious issue, Judge, because the person charged... It was so serious that you didn't raise it, right? Pardon me? Dr. Collins never raised it. It was raised in the amended complaint. It was that issue that... After the district judge had raised the Coughlin issue. Correct, correct. It was, however, in the record on summary judgment, the information. There's another breach, Judge, that is significant because the contract requires that the hearing committee send their findings and their factual findings to the provost and to the professor. This was only sent to the associate provost, who in turn sent a modified letter that did not include any factual findings to Dr. Collins. Therefore, Dr. Collins had 10 days to appeal this decision when he had never received the factual findings of the hearing committee. And that's significant because... A successful appeal, when one doesn't have the factual findings, those findings were never presented to Dr. Collins until discovery in this case. Did they go to his lawyer? No, no. Did he raise this issue? He didn't know about the issue until we discovered that it was an altered letter from Dr. Pope Davis that did not include that. We found that out first in this case when we received the original hearing committee report with the factual findings. Did you say an altered letter? The factual findings were not part of the letter that Dr. Pope Davis sent to Dr. Collins. In other words, the hearing committee sent their report to the associate provost that included the charges, the findings, and then factual findings. The associate provost then sent a letter to Dr. Collins that only included the charges and the finding but did not include the factual findings. That is in the record, Judge, as well, the letter and then the actual factual findings in the supplemental appendix 195 and 200 if you want to review the two different documents. If I could, Judge, I'm running a little low on time. I would like to address the damages issue. The claim is that Dr. Collins failed to show that the breach caused damages. The contract at issue is very clear. You cannot terminate a faculty member or impose severe sanctions, which are reducing the salary less than 2% per year, without adherence to the following procedures. Those procedures were never adhered to. The sanction cannot be imposed until they do. The damages flow directly from the language of the contract in this case. In other words, without adhering to the following procedures, one cannot dismiss a faculty member, nor can one stop paying them salary. It's a severe sanction. That never happened in this case, so the damages flow directly from the contract. It's self-evident from the contract that damages flowed from not only a procedural breach but a substantive breach because it is our position that serious cause was never found. In this case, serious cause does not meet the definition of serious cause in the contract. Therefore, damages are continuing. The four corners of this contract require that salaries paid until this procedure is completed. There is evidence put on about those damages, roughly $5 million, and that's the expected earnings through retirement. This number is a fair number because that is what Dr. Collins anticipated when he signed the contract. That number is much lower, I think, than if you did an analysis of his years of his life left versus his salary for each year. Those damages are in the record, and they're supported, and they're asked for. Judge, until we find ourselves in the position now where Notre Dame could have cut off these damages very easily by performing the procedures correctly. The district court told them that they needed to do that. They never did. They had a second hearing in 2013 where they went through the process again using the criminal conviction as serious cause, but the evidence was in the testament from Notre Dame was Dr. Collins was no longer a professor at that time. In other words, Notre Dame got themselves into a position where they can no longer meet their... Even if the professor doesn't raise it, it leads to, in the process, it leads to his termination. It means that you can't correct the problem later, and the professor is entitled to lifetime salary because of the procedural bobble. That's where your logic leads. No, Judge, you can correct it later. It's very easy to correct. You simply pay him. But your position was that it was impossible. No, it was very possible for them. They would have had to pay him, though, while they corrected the procedure. Notre Dame did not do that. And if they had started paying him in order to affect the procedure, they would have then been subject to the wage claim statute, which would have produced treble damages because it would be unpaid wages. This isn't a mere procedural bobble, though, Your Honor. The district court held that the composition of the hearing committee was the cornerstone. Do you have any evidence of actual bias on the part of Father Coughlin? The contract writes in that it is actual bias to participate. And you have no other evidence? No other evidence other than... Thank you. Addressing very quickly the factual issues that Notre Dame is asking for this court to overturn, the trial court found that the federal conviction was an intervening act that broke the chain of causation. The problem with that, Judge, is that what Dr. Collins did was what he was told to do by the Office of Research, and it's the defendant's conduct that led to that action. So the defendant's conduct cannot form the basis of breaking the chain of causation. Only the plaintiff's conduct in this case, only Dr. Collins. I am out of time, Judge. If you have any other questions, I'd be happy to address them. No further questions. Thank you very much. Marshal, any rebuttal? I'd like to address a few points. And I'll start by going in the order in which I made my opening argument. With respect to the question of waiver, two points. First, my colleague pointed to the question about whether the hearing committee would visit Dr. Collins' lab. And I raise that because it illustrates the way the hearing committee operated and what should have happened if there was really an objection to Father Coughlin, which is Dr. Collins' attorney should have gotten in front of the hearing committee and made a motion to recuse. The issue with the lab was essentially that. The attorney made a request, please visit the lab. The hearing committee took that motion under advisement and denied it. You can see that discussed on page 24 of our opening brief. And in response to Judge Brogan's question, at trial, Notre Dame was allowed to introduce testimony on the waiver question. The testimony was uniformly that Father Coughlin never objected. The problem, though, is that the district court then, in its opinion, said Dr. Collins never objected. I'm sorry, Dr. Collins never objected. The district court, in its trial decision, said we forfeited all that. So all the testimonies in that record, the district court ignored it. But I don't think you even need to get that because the record on summary judgment, as you discussed, is adequate to show that there was no waiver. Third, with respect to the question of serious cause, I found it significant that there seems to be agreement that the standard is substantial evidence. And you also heard agreement that the factual findings of the hearing committee are correct. And then I'd like to point you to one of those in particular, which addresses some of the arguments you heard. Charge 1, as found by the hearing committee, is on page 197 of our appendix. And this is in the factual findings of the hearing committee. I'll just read one sentence. The non-budgeted purchases are disconnected from the scope and objectives of the grant and should have received authorization from NSF. That is among the undisputed factual findings of the hearing committee here. In addition, as Judge Bauer pointed out, the findings by the hearing committee involve the exact same conduct for which Dr. Collins later pleaded guilty to the federal felony of theft from a federal program. And then finally, with respect to the question of the provost, I've heard no serious engagement with the explicit language of the academic articles of this. There are two provisions. I'll point to the second, which is on page 326 of our appendix. And it says, the vice presidents and associate provosts assist the provost in whatever way the provost may desire. If Dr. Collins wants to contend that the associate provost was not authorized to do what he did here, he had the burden to prove that, and he introduced no evidence. Are there no further questions? Thank you, Your Honor. Thanks to both counsel. The case will be taken under advisement.